[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried at Monroe, Connecticut, on August 20, 1977. The plaintiff wife has resided in the State of Connecticut for more than one year next preceding the date of the filing of the complaint. The Court has the requisite jurisdiction to proceed to judgment. There are two minor children issue of the marriage: Janelle E., born August 1, 1985; and Jordan C., born July 6, 1987. The evidence presented indicates that this marriage has irretrievably broken down, and judgment may enter dissolving CT Page 4567 the marriage on that ground. This is a twenty-two year marriage. Plaintiff is forty-four, and defendant is forty-seven. The parties separated in April of 1997. Minor difficulties in the marriage started quite early, but became serious when Janelle was three and was required to have a heart transplant. Janelle had congestive heart failure when she was two and a half, and the outlook was not promising. Janelle had a complicated and difficult heart transplant that was occasioned by several delays before the surgery actually was performed. The surgery occurred at Columbia Presbyterian Hospital in New York City on July 21, 1988.
Subsequent to their daughter's surgery, plaintiff was extremely distraught. She had difficulty sleeping and had frequent panic attacks. The acute stress prior to surgery, at the time of the surgery, and subsequent thereto, eventually led to her voluntary admission to Silver Hills Hospital in New Canaan on January 4, 1991, where she remained for five weeks. The defendant felt embarrassed and annoyed by this intrusion into their lives. Plaintiff's mother came from Colorado to take care of Jordan. The defendant visited the plaintiff at Silver Hills infrequently and, according to her testimony, he warned her that she might have difficulty "keeping the children." In 1995, six years after the transplant, Janelle's condition started to deteriorate. She developed a serious reaction to her medication, her face became contorted and she had dark hair growths in areas that were not adapted for the same. More serious — her growth became stunted. In February of 1996, her medication was changed to FK506, and she started to grow again. Things got better for Janelle, except for the development of acute migraine headaches. Things got worse for the parties. The mother spent most of her waking hours transporting Janelle to New York for examinations and treatment, or transporting her for catherizations. As is not unusual in these unfortunate situations, mothers obsession with Janelle's serious health problems detracted from the expected day-to-day healthy marital relationship. The defendant had been a police officer with the Monroe Police Department for seven years, and then became a member of the security force of U.S. Surgical Company. He has a degree from Wesconn. He rose to be U.S. Surgical's senior security director and, at the time of its merger with Tyco, was earning $179,000 per year before taxes. He worked sixty and seventy hour work weeks and traveled extensively for business purposes. His employment commitments made it impossible to be as supportive as he would have liked to have been and the marriage continued to drift. The defendant is now unemployed due CT Page 4568 to the merger of U.S. Surgical with Tyco in 1998, and it is unlikely that he will acquire employment that will produce income that he has generated in the past. Despite the fact that he is still young, these types of positions are highly competitive and are few and far between. He had testicular surgery in 1991, and has a thyroid condition. He is presently symptom free. He is not prone to the display of his emotions and probably keeps his feelings about his family to himself.
The plaintiff has a B.S. degree in Zoology from the University of New Hampshire, and a Masters degree in Biology from the University of Bridgeport. She taught at the University of Bridgeport as a research biologist and served as administrative manager for Plastic Tooling for six years. She worked until January, 1998. With the present situation, she is obviously not able to work on a regular basis. Both children need supervision, and Janelle's transportation situation back and forth from school and for medical attention, has to be maintained on both a regular and irregular basis. The plaintiff does not want to teach but with her skills and education should obtain employment that will be financially rewarding when the children are not in need of such frequent supervision. Her psychiatric problems are in remission and with the use of anti-depressants and anti-anxiety medication, she is functioning normally. She had cancer of the cervix in 1984, and has had no recurrence. Jordan is now eleven, is healthy and has a well-rounded personality.
Defendant testified that early in the marriage, plaintiff had a short relationship with a coach at the University of Bridgeport, and that later in the marriage she said she had an affair with a repairman. Plaintiff categorically denied any out of marriage relationships. During the trial, plaintiff testified that she found some physical evidence of defendants involvement with other women and that defendant partied occasionally after employment-related activities. There is no substantial evidence to support any findings of infidelity by either party.
The Court is of the opinion that both parties share responsibility for the breakdown of their marriage. Both parties have had great difficulty with coping with stressful events and their common misfortune has not strengthened the bond of marriage, but has served to allow their marriage to disintegrate.
The Court has carefully considered all of the statutory criterial set forth in §§ 46b-81(c) and 46b-82 of the Connecticut CT Page 4569 General Statutes as it relates to assignment of property and alimony in making its orders.
 ORDERS
The Court enters the following orders:
1. The marriage of the parties is dissolved.
2. The parties shall share joint legal custody of the minor children with physical custody to the plaintiff, and reasonable and liberal visitation for the defendant pursuant to the following schedule:
 (a) every other weekend from 6:15 p. m. on Friday through 7 p. m. on Sunday;
 (b) every Tuesday evening from 6 p. m. through Wednesday morning when the defendant will take the children to school;
(c) each Thursday from 6 p. m. through Friday morning;
 (d) alternate visitation beginning with the plaintiff on the following holidays: Memorial Day, July 4th, Labor Day, Thanksgiving, Christmas Eve, Christmas Day, New Year's Eve, New Year's Day, children's birthdays;
 (e) defendant will also have visitation with the children on Father's Day;
(f) plaintiff shall have the children on Mother's Day;
 (g) defendant shall have visitation with the children during the school spring vacation;
 (h) defendant shall have two consecutive weeks of visitation with the minor children each summer provided he shall give plaintiff notice of the designation of the two weeks no later than April 15TH of each year.
3. The defendant shall provide medical insurance for the benefit of the minor children. The insurance shall be of such comprehensive nature so as to include any and all medical expenses relating to Janelle's heart transplant related treatment CT Page 4570 and rehabilitation. The obligation for medical insurance coverage and payment of premiums shall cover the same period of time as the child support. All uninsured and unreimbursed medical, dental and psychological expenses for the minor children shall be divided equally between the parties.
4. Defendant shall, pursuant to federal law commonly known as COBRA, if the plaintiff so elects, assist the plaintiff in obtaining coverage under his existing policy, and he shall pay any additional premium costs. Plaintiff shall be solely responsible for her unreimbursed medical, dental, and hospitalization costs. When plaintiff is no longer eligible pursuant to COBRA, she shall provide her own medical, dental, and hospitalization insurance.
5. Defendant shall provide life insurance in the amount of $300,000 with the children named beneficiaries as long as he is obligated to pay child support.
6. The defendant shall pay child support in the amount of $500 per week until October 31, 1999. Thereafter, child support shall be re-evaluated retroactive to October 31, 1999. Child support shall be payable for each child until high school graduation, but not past his or her nineteenth birthday.
7. Defendant shall pay alimony in the amount of $850 per week to the plaintiff until October 31, 1999. Thereafter, alimony shall be re-evaluated retroactive to October 31, 1999. Each party shall immediately notify the other upon their obtaining employment. Alimony shall terminate upon the death of either party or the remarriage of the plaintiff, but in no event shall the duration of alimony exceed ten years from the date of dissolution. The parties shall exchange tax returns each year for as long as defendant is obligated to pay alimony. The exchange shall occur on or before May 1 of each year.
8. Defendant shall have the benefit of both children for tax deduction purposes.
9. The defendant shall convey to plaintiff all of his right, title and interest in the marital home at 36 Bennetts Bridge Road, Sandy Hook, Connecticut, and plaintiff shall be responsible for payment of the mortgage, taxes and related expenses on said property, and shall indemnify and hold defendant harmless for same. The defendant shall also convey to the plaintiff all of is CT Page 4571 right, title and interest to real estate located on Farm Meadow Road, Newtown, and plaintiff shall be responsible for all related expenses on said property, and she shall indemnify and hold him harmless for same.
10. All of the savings, in checking, cash, value of life insurance, and retirement assets of the parties shall be divided 36 percent to the plaintiff and 64 percent to the defendant. If necessary, a Qualified Domestic Relations Order shall issue to effectuate the division of any deferred assets. These assets shall include:
A. G. Edwards Brokerage Account
Fleet Savings Accounts
Fleet Galaxy Accounts
Peoples Savings Accounts
 Peoples Money Market Accounts including joint account with Raynor Seeley
Both Peoples Checking Accounts
 Cash values in three Provident Insurance Accounts, Crown and USSC Policy
 All IRA accounts, including plaintiff's IRA and the Peoples, Travelers and Webster accounts
401K, T. R. Price account
11. Defendants 1998 bonus shall be equally divided by the parties, however, defendant shall be entitled to any retroactive pay from U.S. Surgical Company.
12. All assets which have been gifted to the children, including snowmobiles, computers, etc., shall be theirs absolutely.
13. Defendant shall have the 1998 BMW, the Honda motorcycle, the Cobalt boat, the snowmobile and trailer, free and clear of any claims by the plaintiff. All items of personal property presently in the possession of the plaintiff shall be hers free CT Page 4572 and clear of any claim by the defendant. This shall include the 1994 BMW and the tractor.
14. Defendant shall pay to plaintiff within thirty days from the date hereof, in order that she pay or becomes reimbursed for paying, the following: Dr. Gordon's bills in the amount of $8,325, the orthodontia balance in the amount of $3,566, and the expenses for the shower chain, medic alert bracelet, and Sonicare totaling $371.44. Defendant shall also pay $3,731 for counseling expense from Eleanor Green.
Plaintiff shall be responsible for payment of any sums due and owing to Raynor M. Seeley, her father.
14. Any tax refunds (U.S. or Connecticut income tax) for the years 1996 and 1997 shall be divided equally by the parties.
The parties shall file joint tax returns for the year 1998 and any tax obligation, and there clearly is one, shall be divided equally between the parties.
15. Each party shall be responsible for their respective counsel fees and costs.
16. Pursuant to the agreement of the parties, defendant shall be responsible for fifty percent of their children's college educations, and plaintiff shall be responsible for fifty percent of said education. Said funds shall be applied to the cost of tuition, room, board, books, transportation and miscellaneous fees. The obligation herein shall apply for each of four years and shall be accomplished prior to each child attaining the age of twenty-four years of age. Each party shall contribute $50,000 to a fund for the benefit of the children's educations. Said funds shall be placed in a trust, and the parties shall jointly be the trustees of said trust applying same to the educational needs of the children until such time as the youngest child has attained the age of twenty-two years of age or sooner graduates from college.
17. Defendant shall be responsible for all liabilities as listed on his financial affidavit and shall hold plaintiff harmless therefrom. In addition, he shall be responsible for the repaying to Aetna of any insurance proceeds received from the parties which are required to be refunded. CT Page 4573
Owens, J.